FABER, Senior District Judge,
dissenting:
I respectfully dissent from the majority’s conclusion that the bankruptcy court’s denial of confirmation of the debtor’s Chapter 13 plan was a final order and, accordingly, believe that appellate jurisdic *255 tion is not proper in this case. The nature of appellate jurisdiction in bankruptcy, the effects of “flexible finality” on the same, and the weight of precedent from other circuit courts of appeals all compel my dissenting opinion.
I.
While federal district courts have original jurisdiction over all cases under the Bankruptcy Code, see 28 U.S.C. § 1334(a)-(b), they also have appellate jurisdiction over, among other matters, bankruptcy court orders, whether final or interlocutory. See 28 U.S.C. § 158(a)(1), (3). Circuit courts of appeals also have appellate jurisdiction over final bankruptcy court orders as an additional layer of appellate review beyond the district court’s own appellate review. See 28 U.S.C. § 158(d)(1) (stating that circuit courts of appeals have appellate jurisdiction over all final orders of a district court where that district court heard bankruptcy appeals pursuant to 28 U.S.C. § 158(a)).[1]
Separately, circuit courts of appeals have direct appellate jurisdiction in bankruptcy, conditioned upon certification by the lower court involved in the bankruptcy proceeding. See 28 U.S.C. § 158(d)(2)(A). This type of direct appeal in bankruptcy requires certification from a lower court that the bankruptcy order being appealed involves (1) a legal question where no circuit court of appeals or Supreme Court decision controls, (2) a matter of public importance, (3) a legal question requiring resolution of conflicting decisions, or (4) a situation where an interlocutory appeal might “materially advance the progress of’ the bankruptcy case or proceeding below.[2] See id. Notably, an appeal under 28 U.S.C. § 158(d)(2), as opposed to an appeal under 28 U.S.C. § 158(d)(1), does not stay any proceeding in the lower court from which the appeal is taken. See 28 U.S.C. § 158(d)(2)(D). Instead, a lower court may, though it need not, affirmatively issue a stay when a circuit court of appeals receives an appeal under Section 158(d)(2). See id.
As the majority rightly notes, the debtor in this case “does not claim to have complied with the procedure for certifying a direct appeal” under 28 U.S.C. 158(d)(2). Supra p. 245 n. 5. However, the record clearly shows that the debtor attempted to comply with one or another procedure for obtaining interlocutory review, but either failed to comply fully or was denied such review. For example, at the confirmation hearing, the debtor asked the bankruptcy court to grant an interlocutory appeal. The bankruptcy court denied the debtor’s request. The record also shows that the debtor, in his motion for leave to appeal to *256 the district court, acknowledged that more circuit courts of appeals than not have held that a denial of confirmation of a Chapter 13 plan is interlocutory. On the one hand, the district judge below, in his written order affirming the bankruptcy court’s denial of confirmation, chose not to address the basis for the district court’s appellate jurisdiction. By the same token, the district judge did not opine that any issue in the debtor’s appeal merited interlocutory review. Just as the opportunity to pursue interlocutory review by the district court under 28 U.S.C. § 158(a)(3) was quashed at the bankruptcy court level, the opportunity to pursue interlocutory review by this Court was lost at both the bankruptcy and district court levels, although not for the debtor’s lack of attempting to pursue interlocutory review.
As an alternative, the debtor now seeks to re-cast an interlocutory appeal as an appeal from a final order. The majority complied, citing the “flexible finality” concept unique to bankruptcy while simultaneously ignoring the significance of procedural requirements for taking an interlocutory appeal in bankruptcy-
II.
A.
Nearly all circuit courts of appeals agree that “the concept of ‘finality’ is more flexible in the bankruptcy context than in ordinary civil litigation.” In re Flor, 79 F.3d 281, 283 (2d Cir.1996) (holding a denial of confirmation of a Chapter 11 plan is interlocutory and reasoning that the Second Circuit’s holding in Maiorino v. Branford Savings Bank, a Chapter 13 case, “applies with comparable force” in the Chapter 11 context) (citing Maiorino v. Branford Sav. Bank, 691 F.2d 89, 91 (2d Cir.1982)); see also In re Rudler, 576 F.3d 37, 43 (1st Cir.2009) (noting that finality is given a more flexible interpretation in bankruptcy relative to other contexts). However, the Tenth Circuit Court of Appeals has specifically held that it does not apply a flexible finality standard in bankruptcy. In re Simons, 908 F.2d 643, 644 (10th Cir.1990) (noting that finality for purposes of 28 U.S.C. § 158 is interpreted in traditional, not flexible, terms). Nevertheless, flexible finality is not a novel concept in bankruptcy, and the purposes underlying its application persist over time.
The First Circuit Court of Appeals distilled the “flexible finality” concept in In re Saco Development Corporation after recognizing that application of traditional finality principles in bankruptcy would lead to “nearly insuperable obstacles to a finding of finality.”[3] 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3926.2, at 326 (3d ed.2012); see In re Saco Local Dev. Corp., 711 F.2d 441 (1st Cir.1983) (Breyer, J.). In Saco, the bankruptcy court had ruled that an insurance company creditor in Chapter 7 liquidation was “entitled to priority payment of Saco’s employee group life, health and disability insurance premiums.” Id. at 442. While the maximum dollar amount of unpaid premiums for which the insurance company could receive priority treatment was $106,000, the actual amount was uncertain because the insurance company’s priority *257 was subject to a reduction provided for wage priorities that other creditors might enjoy. Id. In this context, namely where one creditor’s rights are fixed vis-a-vis the bankruptcy estate generally but subject to alteration vis-a-vis other creditors’ rights, the First Circuit Court of Appeals applied a “flexible finality” standard, holding that “an order that conclusively determines a separable dispute over a creditor’s claim or priority” is a final order, even when other creditors’ unfixed rights could ultimately alter the separable dispute’s outcome at a later stage in the bankruptcy case. Id. at 445-46; see id. at 443 (acknowledging that “[w]ere this not a bankruptcy case, we doubt that the kind of order before us would be considered ‘final.’ ”); cf. In re Bartee, 212 F.3d at 283 (noting that the bankruptcy court’s order, among other things, “conclusively determined the substantive rights at issue and ended the dispute.”).
The same rationale from Saco applies, for example, when lower courts make debt dischargeability determinations, which are generally considered final orders under the “flexible finality” standard. See In re Gagne, 394 B.R. 219, 224-25 (1st Cir. BAP 2008); In re Barrett, 337 B.R. 896, 898 (6th Cir. BAP 2006) (affd 487 F.3d 353). Specifically, once a bankruptcy court determines whether a specific debt is dis-chargeable, all that remains is to enter judgment as to that specific debt. However, several other matters usually remain for the bankruptcy court’s determination. Nevertheless, the discharge of one debt can affect the status and rights of one or more creditors. Thus, although such a determination likely would not be final outside bankruptcy, see Saco, 711 F.2d at 443, it is final inside bankruptcy precisely because “flexible finality” allows courts with appellate jurisdiction in bankruptcy to pluck sufficiently discrete disputes out of the larger, usually ongoing, bankruptcy case. In other words, “flexible finality” allows circuit courts of appeals to immediately review discrete disputes in bankruptcy cases where traditional finality standards would not. However, “flexible finality” does not, and should not, blend a circuit court of appeals’ appellate jurisdiction over final orders as provided under 28 U.S.C. § 158(d)(1) with a circuit court of appeals’ direct appellate jurisdiction over interlocutory matters as provided under 28 U.S.C. 158(d)(2) and 1292(b). Otherwise, to extend the concept of flexible finality too far would render useless the procedures for taking direct appeals in bankruptcy and would render as “mere surplusage” the statutory language outlining those procedures in 28 U.S.C. §§ 158(d)(2) and 1292(b). See Freeman v. Quicken Loans, Inc., — U.S. —, 132 S.Ct. 2034, 2043, 182 L.Ed.2d 955 (2012) (stating that the canon against surplusage favors statutory interpretation that avoids rendering statutory text superfluous); In re Total Realty Management, LLC, 706 F.3d 245, 251 (4th Cir.2013) (“Principles of statutory construction require a court to construe all parts to have meaning and, accordingly, avoid constructions that would reduce some terms to mere surplus-sage [sic].”)(internal quotations omitted).[4]
Given the core purpose of the flexible finality standard in bankruptcy, denial of confirmation of a proposed reorganization plan cannot convincingly be a “discrete dispute” appealable as a final order under any standard of finality. Indeed, Saco and others imply that a discrete dispute for purposes of “flexible finality” most proper *258 ly refers to situations where one creditor’s rights become fixed while other issues in the bankruptcy case remain unresolved.[5] Cf. Matter of Lybrook, 951 F.2d 136, 137 (7th Cir.1991) (orders in ongoing bankruptcy cases can be final when they “re-solvef ] a free-standing dispute of the sort that, outside of bankruptcy, would be an independent lawsuit.”) (Posner, J.). That is not this case. Essentially everything remains unresolved in the Chapter 13 bankruptcy below. The majority erroneously argues the opposite. Specifically, because “[t]he bankruptcy court’s order denied confirmation of [the debtor’s] plan and directed the case dismissed unless he took further action,” the majority concludes that nothing remains for the bankruptcy court to do except enter dismissal, “unless [the debtor takes] further action.” Swpra p. 247. The majority’s diminution of the twenty-one day window within which the debtor may, among other things, file an amended plan and resume progress toward settling at least some expectations among the parties to the reorganization underscores the weakness of the position that “flexible finality” counsels a finding of finality when confirmation of a reorganization plan is denied. Indeed, an order cannot sensibly be final when it not only fails to dismiss the underlying case but additionally advises that a party may revise its own court filings.
B.
Without squarely addressing the merits, one can readily glean the debtor’s aim from the record below — he seeks immediate resolution of what he asserts is a novel legal issue. Assuming the debtor is correct, his case’s legal novelty makes it a prime candidate for interlocutory review under 28 U.S.C. 158(d)(2) or 28 U.S.C. 1292(b). However, any novelty of this case’s merits, and any eagerness to have this Court reach them, should not bend the judicially-crafted “flexible finality” concept such that it renders the multiple avenues for interlocutory appeals unnecessary.
However, I do not write separately to fault the debtor for not obtaining interlocutory review or failing to march in lockstep with its attendant procedural formalities. Instead, I write separately, in part, to show how the statutory procedures for an interlocutory appeal in this case could have avoided the waste of judicial resources that has already occurred.[6] Recall, pursuing an interlocutory appeal under either 28 U.S.C. § 158(d)(2) or § 1292(b) does not automatically stay the proceedings below. See 28 U.S.C. *259 §§ 158(d)(2)(D) and 1292(b). In other words, had the debtor pursued or been granted interlocutory review, the bankruptcy case could have proceeded below without pause. Creditor disbursements could have been made without stop-gap measures described below. The debtor could have filed an amended plan or converted his Chapter 13 reorganization to Chapter 7 liquidation. Instead, the bankruptcy case below has been stayed pending this appeal. Indeed, to achieve the same end of making disbursements to creditors pending appeal of this case, the bankruptcy court entered a conditional order confirming the debtor’s plan. The bankruptcy court likely did not enter the conditional order because it suddenly changed its mind about the debtor’s plan. Rather, the bankruptcy court likely entered the conditional order to address practical difficulties the Chapter 13 Trustee would face in administering a bankruptcy estate while an appeal of a purportedly final order to this Court was pending.[7] The conditional order’s text makes this point clear.
I also write separately to show that, with today’s ruling, this Court strays from the goal of “flexible finality,” reviewing discrete disputes within an ongoing bankruptcy case, instead choosing to join those circuit courts of appeals that have effectively made the test for “flexible finality” indeterminate. Consequently, along with the adoption of an indeterminate test for finality in bankruptcy arises the specter of jurisdiction creep.[8] Bit by bit, the majority’s version of “flexible finality” will allow bankruptcy events less significant than denial of confirmation to be final for purposes of appeal,[9] so long as the lower court “intended” finality or so long as judicial economy purportedly bends in just the right direction. In other words, the majority’s stated appeal to pragmatism equates to acquiescence to indeterminacy, a regrettable move endorsed by some circuit courts of appeals that have held that denial of confirmation of a reorganization plan can be a final order.
III.
A.
Regarding this Court’s precedent, the majority cites several cases that purport *260 edly demonstrate a “long history of allowing appeals from debtors whose proposed plans are denied confirmation, without questioning the finality of the underlying order.” Supra p. 245. The majority then relegates another of this Court’s cases to a footnote, assigning it “minimal persuasive authority” because it relied entirely on out-of-circuit authority without any “independent reasoning.” Supra p. 246 n. 6.; see In re Massey, 21 Fed.Appx. 113 (4th Cir.2001). However, while citing opinions that do not squarely address finality in bankruptcy and, by proxy, jurisdiction, the majority ignores this Court’s general distaste for relying on sub silentio holdings. See United States v. Horton, 693 F.3d 463, 479 n. 16 (4th Cir.2012) (Agee, J.) (citing several Supreme Court and Fourth Circuit cases for the proposition that a sub silen-tio holding is not binding precedent or, in other words, that this Court is “bound by holdings, not unwritten assumptions.”) (quoting Fernandez v. Keisler, 502 F.3d 337, 343 n. 2 (4th Cir.2007)).
I find it a curious supposition that the persuasive value of a string of cases ignoring an issue ought to outweigh the persuasive value of a case that squarely addresses that same issue. See In re Massey, 21 Fed.Appx. at 114 (4th Cir.2001) (holding that “[a]n order denying confirmation of a proposed Chapter 13 plan, without also dismissing the underlying petition or proceeding, is not final for purposes of appeal.”). Nevertheless, this is what the majority posits through its argument by analogy and reliance on sub silentio holdings. See supra pp. 245-46. Otherwise, the majority’s assertion that its “holding today does not extend [this Court’s] appellate jurisdiction but instead justifies its existing parameters” goes unsupported since jurisdiction in this case depends on the finality of a denial of confirmation. See supra p. 249.
I recognize this Court’s general disposition with regard to its own unpublished opinions. See, e.g., Loe. R. 32.1 (disfavoring citation to this Court’s unpublished opinions of a certain age). Nevertheless, I simply cannot find that reliance on sub silentio holdings or other assumptions is preferable. Accordingly, I believe this Court’s precedent is, at the very least, confused regarding whether a denial of confirmation of a reorganization plan is a final order and, as a result, I similarly believe that examining authority from other circuit courts of appeals as persuasive is appropriate in this case.
B.
More circuit courts of appeals than not have concluded that a denial of confirmation of a reorganization plan is not a final order in bankruptcy. See In re Flor, 79 F.3d 281, 283 (2d Cir.1996) (holding a denial of confirmation of a Chapter 11 reorganization plan was non-final, but noting that its holding derived from an earlier case, which held that a denial of confirmation of a Chapter 13 reorganization plan was non-final) (citing Maiorino v. Branford Savings Bank, 691 F.2d 89 (2d Cir.1982)); In re Zahn, 526 F.3d 1140, 1143-44 (8th Cir.2008) (holding a denial of confirmation of a Chapter 13 reorganization plan was non-final); In re Lievsay, 118 F.3d 661, 662 (9th Cir.1997) (holding a denial of confirmation of a Chapter 11 reorganization plan was non-final); In re Simons, 908 F.2d 643, 645 (10th Cir.1990)(holding a denial of confirmation of a Chapter 13 reorganization plan was non-final). Other circuit courts of appeals, while not having squarely answered whether a denial of confirmation of a reorganization plan is a final order in bankruptcy, indicate they lean toward the conclusion that a denial of confirmation is interlocutory. See In re Watson, 403 F.3d 1, 5 (1st Cir.2005) (holding *261 that “even if [an earlier] order denying confirmation of the [Chapter 13] plan was not final at the time it was issued,” the order was later final after the debtor’s opportunity to file an amended plan or take other action had passed); In re Coffin, 435 B.R. 780, 784 (1st Cir. BAP 2010) (noting, in general, that orders denying confirmation of a Chapter 13 reorganization plan are interlocutory, but holding that the order in that case satisfied the requirements in 28 U.S.C. § 158(a)(3) for taking an interlocutory appeal from the Bankruptcy Court to the First Circuit’s Bankruptcy Appellate Panel); cf. In re UAL Corp., 411 F.3d 818, 821 (7th Cir.2005) (Posner, J.) (noting that a “Chapter 11 bankruptcy is not final until a plan of reorganization is confirmed.”). Two circuit courts of appeals have held that denial of confirmation of a reorganization plan can be final.[10] See In re Armstrong World Indus., Inc., 432 F.3d 507, 511 (3d Cir.2005); In re Bartee, 212 F.3d 277, 283-84 (5th Cir.2000) (noting that, even under its intent-based inquiry, the Fifth Circuit Court of Appeals could find that denial of confirmation of a reorganization plan is interlocutory “if the order addressed an issue that left the debtor able to file an amended plan (basically to try again)”).
The majority argues that circuit courts of appeals that conclude denial of confirmation of a Chapter 13 plan is interlocutory apparently ground their decision “upon standard finality principles.” Supra p. 247. I do not believe this to be the case. Indeed, by so arguing, the majority projects the Tenth Circuit Court of Appeals’ reasoning in In re Simons onto the circuit courts of appeals that happen to agree with the Tenth Circuit Court of Appeals’ conclusion on this issue, despite their differing views on how finality is evaluated in bankruptcy. Recall, In re Simons explicitly grounded its conclusion upon standard finality principles. See In re Simons, 908 F.2d at 644. However, other circuit courts of appeals that conclude a denial of confirmation of a reorganization plan is interlocutory arrive at that conclusion despite the flexible concept of finality in bankruptcy proceedings. See In re Flor, 79 F.3d at 283; In re Zahn, 526 F.3d at 1143. In other words, even keeping the flexible finality concept in mind, reasonable jurists conclude that a denial of confirmation of a reorganization plan is, nevertheless, interlocutory. This conclusion is not without reason.
For example, before deciding In re Flor, the Second Circuit Court of Appeals addressed the finality of a denial of plan confirmation in the context of Chapter 13 reorganization plans in Maiorino v. Branford Savings Bank, 691 F.2d 89 (2d Cir.1982). There, the Second Circuit Court of Appeals held that a denial of confirmation of a Chapter 13 plan is not a final order, even when an order confirming a plan is final. The Maiorino Court explained in more detail:
Nor do we find it strange as a matter of policy that an order confirming a plan which would, we agree, be final, is ap-pealable by an objecting creditor while an order rejecting a proposed plan is not final and not appealable by the Chapter 13 debtor [except as an interlocutory appeal]. So long as the [Chapter 13 bankruptcy] petition is not dismissed [ ... ] it is open to the debtor to propose another plan, and for all that an appellate court would know in any given case such a plan might well be acceptable to *262 the parties or bankruptcy judge concerned.
Maiorino, 691 F.2d at 91 (emphasis added). In In re Zahn, the Eighth Circuit Court of Appeals used similar reasoning to draw the distinction between the finality of confirmation of a reorganization plan and the interlocutory character of denial of confirmation of a reorganization plan. There, the Eighth Circuit Court of Appeals noted that orders denying confirmation of a reorganization plan “leave the way open for negotiations” among the debtor and various creditors laying claim to the bankruptcy estate. In re Zahn, 526 F.3d at 1143 (8th Cir.2008). Nevertheless, the majority apparently sees no reasoned basis for distinguishing between the finality of confirmation of a reorganization plan and the denial of confirmation of a reorganization plan, relying, in part, on the supposedly more pragmatic approach to “flexible finality” espoused by the Third and Fifth Circuit Courts of Appeals.
However, even In re Bartee provides some support for distinguishing between the finality of confirmation of a reorganization plan and denial of confirmation of a reorganization plan. There, the bankruptcy court’s order denying confirmation of the reorganization plan also classified a creditor’s claim as secured over the debt- or’s objection; instead, the debtor wanted the secured creditor’s claim to be treated as unsecured and subject to the Bankruptcy Code’s cramdown provision. In re Bar-tee, 212 F.3d at 281. At that point, the secured creditor’s rights were fixed and no amount of amended Chapter 13 plans could change the secured creditor’s status. In other words, even though the bankruptcy court denied confirmation of the reorganization plan, it also fixed one party’s rights such that a “discrete dispute” existed within the larger bankruptcy case. Accordingly, the bankruptcy court order in In re Bartee both denied confirmation of the reorganization plan and fixed the secured party’s rights. On the latter basis alone, the bankruptcy court order in In re Bartee could perhaps be considered final under the “flexible finality” standard without needing to consider the question of a denial of confirmation’s finality.
Notwithstanding the unique factual issue in In re Bartee, the majority insists that a more “pragmatic” rule, like those adopted by the Third and Fifth Circuit Courts of Appeals, best suits denials of confirmation. However, as noted above, I believe these rules are too indeterminate to keep the “flexible finality” concept from effectively erasing the line between final and interlocutory orders in bankruptcy, a result inconsistent with flexible finality’s goal of immediately reviewing discrete disputes within an ongoing bankruptcy case. One set of commentators stated it well
the Third Circuit — with a close parallel in the Ninth Circuit — has taken flexibility at least as far as any, announcing an approach that could justify intensely case-specific analysis that would find finality whenever immediate appeal seems desirable. It seeks to effectuate a practical termination of the matter, considering the impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclu-sive effect of our decision on the merits on further litigation, and whether the interest of judicial economy would be furthered. These factors could lead almost anywhere ... The interest of judicial economy can embrace the entire calculus of appealability. Decisions taking this approach all have reached results that seem sensible enough, but have not suggested any apparent limits
16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3926.2, at 339-342 (3d *263 ed.2012). For these reasons, examining factors such as the lower court’s “intent” with regard to finality or enshrining judicial economy as part of a jurisdictional rule crafts not a rule but a set of exceptions.
Separately, the majority highlights the Fifth Circuit Court of Appeals’ disfavor of a situation where a debtor “must choose between filing an unwanted or involuntary plan and then appealing his own plan, or dismissing his case and then appealing his own dismissal.”[11] Id. I believe that this rationale, which contrasts starkly with that used by the Second and Eighth Circuit Courts of Appeals as explained above, assumes too much of the debtor’s intent and, from a policy point of view, “there is something to be said in a day of burgeoning appellate dockets for taking care not to construe jurisdictional statutes — particularly those conferring power on the parties to agree to a direct appeal to the court of appeals — with great liberality.” Maiori-no, 691 F.2d at 91. Moreover, the chance that a bankruptcy court might ultimately confirm a plan with which the debtor strongly disagrees should not override the value of negotiation in the plan formulation process.
IV.
Considering all of the jurisdictional statutes relevant here, the debtor’s quest to shape Fourth Circuit law on the merits of his case might more properly have followed the routes provided under either 28 U.S.C. §§ 158(d)(2) or 1292(b) — routes provided for interlocutory appeals. Nevertheless, the debtor’s case wended its way here under the pretense of an appeal pursuant to 28 U.S.C. § 158(d)(1), an appeal of a purportedly final order, which it should not be, even under the flexible standard of finality applied in bankruptcy.
However, by flexing “flexible finality” in this way, the majority effectively reads out the avenues for interlocutory relief afforded by bankruptcy’s jurisdictional statutes. Moreover, the majority’s rule in this case discourages negotiation and mediation in reorganization cases where, frankly, those processes are needed. At the same time, the majority’s decision encourages start- and-stop appeals, thus hampering the aim of judicial economy the majority purports to achieve with its ruling. Finally, the majority needlessly expands appellate jurisdiction in an area where it has been carefully circumscribed. I find no reasonable basis for this jurisdictional overreach.
For all these reasons, I dissent, with respect, from the decision of the majority.

. In Connecticut National Bank v. Germain, the Supreme Court noted that 28 U.S.C. §§ 158(d)(1) and 1291 "do not pose an either- or proposition” regarding the courts of appeals' appellate jurisdiction over final orders in bankruptcy. See Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Accordingly, the statutes overlap to an extent, granting appellate jurisdiction over final orders in bankruptcy to circuit courts of appeals through two points of authority.

. 28 U.S.C. § 158(d)(2) essentially grants appellate jurisdiction over interlocutory orders in bankruptcy to circuit courts of appeals. The Supreme Court has specifically held, however, that 28 U.S.C. § 158(d)(2) does not, by negative implication, limit circuit courts of appeals' appellate jurisdiction over interlocutory appeals pursuant to 28 U.S.C. § 1292(b). Connecticut Nat. Bankv. Germain, 503 U.S. at 253, 112 S.Ct. 1146. Accordingly, these statutes overlap in a manner similar to 28 U.S.C. §§ 158(d)(1) and 1291. Additionally, while 28 U.S.C. §§ 158(d)(2) and 1292(b) differ in ways largely irrelevant here, the two statutes are significantly similar in one regard — both contain procedural requisites for taking an interlocutory appeal.

. The majority apparently contends that Maiorino, because it did not distill flexible finality as Saco did only one year later, was blind to the need for such a concept in bankruptcy. In other words, the majority implies that Maiorino’s holding — denial of confirmation of a Chapter 13 plan is interlocutory— was derived purely from traditional finality principles. See supra pp. 247-48. Saco's tracing of the history of finality in bankruptcy refutes this as does the Second Circuit Court of Appeals’ confirmation of Maiorino’s holding in In re Flor. See generally Saco, 711 F.2d at 444-46; In re Flor, 79 F.3d at 283.

. The majority obliquely responds to this argument by stating that, despite its holding today, avenues for interlocutory relief remain open. Supra p. 18 n. 13. I do not dispute such avenues remain open. Rather, I contend such avenues become useless the more willing a court remains to stretch the concept of “flexible finality” in bankruptcy.

. A wholly reasonable exception to the standard discrete dispute justification for applying flexible finality is found in this Court's holding in McDow v. Dudley, 662 F.3d 284 (2011). In McDow, this Court held that denying a motion to dismiss a Chapter 7 case as abusive, under 11 U.S.C. § 707(b), is a final order under “flexible finality.” Id. at 290. After a thorough examination of the nature of a § 707(b) motion, including the Congressional policy behind that provision, this Court concluded, in part, that allowing immediate appeal promoted the statutory purposes of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See id. Unlike in McDow, however, applying flexible finality to denial of confirmation of a reorganization plan serves no special Congressional purpose, contrary to the majority's broad appeal to debtor sympathy. Supra pp. 249-50.

. As explained more fully below, while encouraging judicial economy is a laudable goal and should be pursued where possible, enshrining that goal in a rule requiring application of a multi-factor test for finality, as some circuit courts of appeals have done, results in a particularly indeterminate rule since “judicial economy” can be framed so many different ways. This is particularly troublesome when the rule bears so heavily on whether a court has jurisdiction, an issue that generally should not be fact-intensive or merits-based. See Matter of Lopez, 116 F.3d 1191, 1194 (7th Cir.1997) (“Jurisdictional rules ought to be simple and precise so that judges and lawyers *259 are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated. ”)(Posner, J.).

.The debtor's argument that the bankruptcy court’s conditional order confirming the debt- or’s plan cures any jurisdictional defect is meritless. First, as a definitional matter, the fact that the order is “conditional” eliminates the possibility that it is “final,” unless conditions are satisfied. Here, the condition to be satisfied is this Court’s decision on appeal. Second, the Chapter 13 Trustee, and not the debtor, moved for the conditional order in this case. The Trustee did so in order to ensure continuous and orderly administration of the bankruptcy estate, because an appeal like the one in this case disrupts bankruptcy estate administration. Lastly, the debtor cites Equipment Finance Group, Inc. v. Traverse Computer Brokers, 973 F.2d 345 (4th Cir. 1992) to support his argument that the conditional order cures any jurisdictional defect. That case does not apply here, where the order at issue is not a final judgment but instead is, patently, a conditional order.

. See Thomas C. Marks, Jr., Jurisdiction Creep and the Florida Supreme Court, 69 Alb. L. Rev. 543 n.* (2006)(citing two related versions of the military term "mission creep” and drawing the strongest parallel with the latter, for purposes of the term "jurisdiction creep”).

. Thankfully, the majority has drawn a line where it will consider some bankruptcy matters interlocutory. Regrettably, however, the examples cited demonstrate the line's inadequacy and, moreover, merely list types of decisions that are interlocutory by any measure — granting interim fee awards and continuing an automatic stay until a motion hearing is held, for example. See supra pp. 246-47.

. I can find no circuit court of appeals that has held a denial of confirmation of a reorganization plan is per se a final order.

. On this point, the majority’s concerns regarding standing are unwarranted. See supra p. 248 n. 10. When appealing one’s own plan, no matter how odd a procedure it might seem, a party can nonetheless be a "person aggrieved,” even if a second, third, or eighth amended plan is finally confirmed. This is so because each previous denial of confirmation — which I contend would be interlocutory — merges with the plan’s final confirmation. See In re Giesbrecht, 429 B.R. 682, 688 (9th Cir. BAP 2010); In re Pearson, 390 B.R. 706, 710 (10th Cir. BAP 2008) (vacated as moot). This merger concept is not unique to bankruptcy. See, e.g., Shannon v. General Electric Co., 186 F.3d 186 (2d Cir.1999) (Sotomayor, J.) ("When a district court enters a final judgment in a case, interlocutory orders rendered in the case typically merge with the judgment for purposes of appellate review ... By making interlocutory orders unappealable until a final judgment has been entered, these rules advance the historic federal policy against piecemeal appeals.”) (citations and internal quotation marks omitted); cf. Richardson-Merrell, Inc. v. Roller, 472 U.S. 424, 430, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)(“Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment.”).