BENTON, Circuit Judge.
In the aftermath of Thomas Petters’ Ponzi scheme, Douglas A. Kelley — as trustee for Petters Company, Inc. (PCI) and *455 eight associated special-purpose entities (SPEs) — filed Chapter 11 bankruptcy petitions. On Kelley’s motion, the bankruptcy court consolidated the bankruptcy estates of PCI and the SPEs “for all purposes substantive and administrative.” Lenders to PCI and the SPEs appealed. The district court[1] dismissed, holding the Lenders did not have standing to appeal the consolidation order because they were not “persons aggrieved.” Westlb AG v. Kelley, 531 B.R. 783, 795 (D.Minn.2015). The Lenders appeal. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court affirms.
I.
Petters, convicted of wire fraud, mail fraud, conspiracy and money laundering, conducted a multi-billion-dollar Ponzi scheme using PCI and eight wholly-owned SPEs. See United States v. Petters, 663 F.3d 375, 378 (8th Cir.2011). PCI and the SPEs were placed into receivership. The receiver filed Chapter 11 bankruptcy petitions for PCI and the SPEs. Kelley was appointed as the Chapter 11 trustee in each bankruptcy case, which the bankruptcy court consolidated into one jointly-administered case.
To fund PCI, Petters used various SPEs, which held illusory accounts receivable and had no appreciable assets entering bankruptcy. PCI also served as a holding company for several of the SPEs. Two groups of Lenders made loans to certain SPEs. Another group of Lenders did not make loans directly to the SPEs, but only to other Lenders. Each Lender was a net winner from the Ponzi scheme.
As net winners, none of the Lenders filed a proof of claim. Kelley, however, named the Lenders as defendants in separate avoidance actions. Seeking to recover funds for the bankruptcy estates, Kelley alleges that the SPEs wrongfully transferred funds to the Lenders. If the Lenders were found liable in the avoidance actions, they could then file proofs of claim in the bankruptcy case.
Kelley — with the support of the Committee of Unsecured Creditors — moved to substantively consolidate PCI and the SPEs. See generally Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219, 61 S.Ct. 904, 85 L.Ed. 1293 (1941) (recognizing bankruptcy referee’s power “consolidating the estates” of two related entities); In re Giller, 962 F.2d 796, 799 (8th Cir. 1992) (recognizing “the bankruptcy court’s power to order substantive consolidation”). The Lenders, along with nonparty Elistone Fund, objected to the consolidation. Kelley moved to strike their objections, asserting they were not parties in interest. The motion to strike was denied by the bankruptcy court. Granting the consolidation motion and consolidating the assets and liabilities of PCI and the SPEs in the main bankruptcy case, the bankruptcy court found that PCI and the SPEs were interrelated, and had engaged in “massive commingling and the erosion of corporate boundaries.”
The Lenders and Elistone Fund appealed the consolidation. Kelley first moved to certify those appeals directly to this court, which was denied. Kelley then moved to dismiss the appeals, arguing that the Lenders did not have standing as “persons aggrieved” to appeal the bankruptcy court’s order. The Lenders responded that (1) Kelley was estopped from objecting to their standing because he expressly stated in his certification motion that the *456 district court had jurisdiction to hear the appeals and (2) nevertheless, they were persons aggrieved.
The district court dismissed the appeals, holding Kelley was not estopped, and that the Lenders were not “persons aggrieved,” The Lenders appeal.
II.
The Lenders argue Kelley should be estopped from asserting they lacked standing to appeal. The Lenders note that, in the certification motion, Kelley said that the district court had “jurisdiction over ... the pending appeal pursuant to 28 U.S.C. §§ 158(a) and 1381 and Federal Rule of Bankruptcy Procedure 8001(f)(3)(C).” Thus, according to the Lenders, Kelley should be estopped from invoking the “persons aggrieved” doctrine (which Kelley contends is jurisdictional).
The district court declined to es-top Kelley from arguing that the Lenders were not persons aggrieved. This court reviews an application of the judicial estop-pel doctrine for an abuse of discretion. Van Horn v. Martin, 812 F.3d 1180, 1181-82 (8th Cir.2016). This court “will not overturn a district court’s discretionary application of the judicial estoppel doctrine unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors.” Stallings v. Hussmann Corp., 447 F.3d 1041, 1046-47 (8th Cir.2006)
Judicial estoppel, an equitable doctrine, “prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.” New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). This doctrine “protects the integrity of the judicial process.” EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 679 (8th Cir.2012). The Supreme Court has articulated three non-exhaustive factors to aid a court in determining whether to apply the doctrine: (1) whether a party’s later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that the court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the party if not estopped. Jones v. Bob Evans Farms, Inc., 811 F.3d 1030, 1032-33 (8th Cir.2016), citing New Hampshire, 532 U.S. at 749-51, 121 S.Ct. 1808. “Notably, judicial es-toppel does not apply when a debtor’s prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court.” Stallings, 447 F.3d at 1049.
The district court did not abuse its discretion in declining to estop Kelley’s arguments. First, Kelley’s statement that the district court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334 is not clearly inconsistent with his later position that the Lenders are not parties aggrieved. The cited statutes address the finality of bankruptcy court judgments, orders, and decrees. There is nothing clearly inconsistent with arguing that, based on the finality of the bankruptcy court’s order, the district court has jurisdiction over the appeal, and later arguing, because the Lenders did not have standing to appeal, that the appeal should be dismissed. See Simon v. Safelite Glass Corp., 128 F.3d 68, 73 (2d Cir.1997) (“If the statements can be reconciled there is no occasion to apply an estoppel.”).
As to the second New Hampshire factor, the Lenders claim that the district *457 court accepted Kelley’s earlier position by agreeing in its denial of the certification motion that it “has jurisdiction over the appeals under 28 U.S.C. § 158(a).” Section 158(a) governs the finality of a bankruptcy court order, not standing. There was nothing clearly inconsistent with the court noting the finality of the bankruptcy court order. More importantly, this factor aims to avoid “the perception that either the first or the second court was misled.” New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808. Here, the same court presided over both stages of the proceedings and showed no concern that Kelley was “playing fast and loose with the courts.” See CRST Van Expedited, 679 F.3d at 679.
Under the final Neto Hampshire factor, the Lenders argue that Kelley’s inconsistent statements prejudiced them because they (1) expended money briefing the certification motion and (2) had to respond to Kelley’s standing arguments in their reply brief rather than their opening brief. Each contention is without merit. As the district court correctly noted, at the time of the certification motion, an additional appellant that has since settled — Elistone Financial — had standing to appeal as a net loser in the scheme. While still in bankruptcy court, Kelley moved to strike the Lenders’ objections on the basis that they were not parties in interest and lacked prudential standing to. object. Thus, the Lenders have not demonstrated that they suffered an unfair detriment or that Kelley gained an unfair advantage by his statement.
The district court did .not abuse its discretion in declining to estop Kelley from asserting that the Lenders are not persons aggrieved.
III.
The Lenders argue that, even if Kelley is not estopped, the persons aggrieved doctrine invalidly restricts their ability to appeal bankruptcy court orders. According to the Lenders, this court should “reconsider” the doctrine because it is no longer valid after the 1978 amendments removed explicit references to the doctrine in the Bankruptcy Code.
The Lenders concede that this court has long applied the persons aggrieved doctrine. This court even stated that the original foundation of the doctrine has been repealed. See In re O & S Trucking, Inc,, 811 F.3d 1020, 1022-23 (8th Cir.2016) (“Although the modern Bankruptcy Code does not articulate a standard for appellate standing, our circuit consistently has applied a ‘person aggrieved’ standard derived from the Bankruptcy Act of 1898.”); In re AFY, 734 F.3d 810, 819 n. 10 (8th Cir.2013) (“The ‘persons aggrieved’ standard is ‘[d]e-rived from the now-repealed Bankruptcy Act of 1898.’ ”). Having held that the persons aggrieved doctrine survives the 1978 amendments to the Bankruptcy Code, this court declines to reconsider the doctrine. See Cnty. of Charles Mix v. U.S. Dep’t of Interior, 674 F.3d 898, 902 (8th Cir.2012) (noting that a panel of this court cannot overturn the decision of a previous panel). See generally In re Westwood Cmty. Two Ass’n, Inc., 293 F.3d 1332, 1334 (11th Cir. 2002) (collecting decisions of First, Second, Third, Sixth, Seventh, Ninth and Tenth Circuits applying the persons aggrieved doctrine'after the 1978 amendments).
IV..
The Lenders argue that, even if the persons aggrieved doctrine is valid, they satisfy its requirements as persons aggrieved. This court reviews de novo a district court’s determination whether a plaintiff has standing. Hargis v. Access Capital Funding, LLC, 674 F.3d 783, 790 (8th Cir.2012). Whether an appellant is a person aggrieved is generally a question of *458 fact for the district court, but where the facts are undisputed, this court may treat the question as an issue of law. In re El San Juan Hotel, 809 F.2d 151, 154 n. 3 (1st Cir.1987).
Standing in a bankruptcy appeal is narrower than Article III standing. O & S Trucking, 811 F.3d at 1022-23. “The governing rule — a so-called person aggrieved doctrine — was derived from the Bankruptcy Act of 1898, and it carried over to practice under the modern Bankruptcy Code.” In re Peoples, 764 F.3d 817, 820 (8th Cir.2014). “ ‘Person aggrieved’ is, of course, a term of art: almost by definition, all appellants may claim in some way to be ‘aggrieved,’ else they would not bother to prosecute their appeals.” Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 741 (3d Cir.1995). “[I]n bankruptcy proceedings, which typically involve a myriad of parties ... indirectly affected by every bankruptcy court order ..., the need to limit collateral appeals is particularly acute.” Id. (second alteration in original).
“The doctrine limits standing to persons with a financial stake in the bankruptcy court’s order, meaning they were directly and adversely affected pecu-niarily by the order.” In re Peoples, 764 F.3d at 820. An appellant is a party aggrieved “if the bankruptcy court order diminishes the person’s property, increases the person’s burdens, or impairs the person’s rights.” In re Marlar, 267 F.3d 749, 753 n. 1 (8th Cir.2001).
The Lenders believe that they are persons aggrieved because the substantive consolidation (1) diminished their property by increasing Kelley’s potential recovery against them and decreasing the value of their contingent claims, and (2) impaired their rights by precluding potential affirmative defenses in the avoidance actions.
Here, however, any potential pecuniary harm to the Lenders is several steps removed and not a “direct” pecuniary impact. See In re Peoples, 764 F.3d at 820. Several steps must occur before the Lenders suffer a pecuniary harm: Kelley must prevail in the avoidance actions, the Lenders must pay the judgment in full, and then they must file a valid proof of claim against the consolidated estate. This possibility of harm does not satisfy the persons aggrieved standard. See Travelers Ins. Co., 45 F.3d at 742 (holding that party was not person aggrieved because they were “at least two steps removed from any possible diminution of its property”); Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 208 (5th Cir.1994) (noting that pecuniary impact must be “real and immediate ” (emphasis added)).
The Lenders emphasize that they are persons aggrieved because the consolidation order impairs their affirmative defenses in the avoidance actions. According to the Lenders, the substantive consolidation order transforms two groups of Lenders into initial transferees of PCI, rather than subsequent transferees. This change, the Lenders say, eliminates good faith affirmative defenses otherwise available in the avoidance actions. See 11 U.S.C. § 550(b)(1) (“The trustee may not recover ... from a transferee that takes for value ..., in good faith, and without knowledge of the voidability of the transfer avoided....”).
Generally, a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved. See In re LTV Steel Co., 560 F.3d 449, 453 (6th Cir.2009) (“[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that *459 makes a party ‘aggrieved’ so as to confer standing in a bankruptcy appeal.”). This is true even if, as here, litigation has already begun against the defendant, and the possibility of liability is more than theoretical. See id. at 454.
In an analogous case, the Eleventh Circuit held that an adversary defendant is not a person aggrieved, even if the bankruptcy court order strips the defendant of a defense in the adversary proceedings. In re Ernie Haire Ford, Inc., 764 F.3d 1321, 1327 (11th Cir.2014). The trustee there filed adversary proceedings against a former creditor, who moved to enjoin the proceedings as untimely under the bankruptcy plan’s litigation-bar date. Id. at 1324. The trustee then moved to amend the plan to allow the adversary proceedings to go forward. Id. The bankruptcy court granted the motion. Id. The adversary defendant sought to appeal. Id.
The Eleventh Circuit held that the adversary defendant was not a person aggrieved by the bankruptcy court’s order. The court held that an order that subjects a party to the risks of litigation causes only indirect harm to that party. Id. at 1326. Further, even if a bankruptcy court order deprived a party of “a defense that would have otherwise been available to him,” it did not render the defendant a party aggrieved. Id. at 1326-27.
Here, as in Ernie Haire, the bankruptcy court’s order arguably strips the Lenders of certain defenses in their avoidance actions. The Lenders attempt to distinguish Ernie Haire by asserting that, unlike their Code-based affirmative defense, the defense in Ernie Haire was created by the bankruptcy plan, not the Bankruptcy Code itself. As the dissent notes, the Ernie Haire court considered that distinction: “Even if we considered [the defendant’s] interest in avoiding litigation by enjoining a lawsuit as different from his interest in avoiding liability, we would not deem [the defendant] a person aggrieved because his interest is not protected by the Bankruptcy Code.” Id. at 1327; see also id. at 1327 n. 4 (“[W]e are not saying that an adversary defendant can never be a person aggrieved. An adversary defendant may satisfy our standard if his appeal attempts to defend an interest that is protected by the Bankruptcy Code.”). These quotations from Ernie Haire, however, are not the ultimate holding, but rather facts that “only serve[d] to highlight that [the adversary defendant] is not a person aggrieved.” Id. at 1327.
The court in Ernie Haire did not hold that a defendant with a potential Code-based defense is automatically a person aggrieved with standing to appeal from a bankruptcy court order. Here, the Lenders’ citation of a Bankruptcy Code provision whose application may be altered by the bankruptcy court’s order does not change the fact that the Lenders’ interest in avoiding liability is antithetical to the primary purposes of the Bankruptcy Code. See In re LTV Steel Co., 560 F.3d at 454 (stating that the interest in avoiding liability to the estate “is diametrically opposed to the primary goal of ... the Bankruptcy Code in general, which is to minimize the injury to creditors” (alteration in original)). Moreover, even if the Lenders’ interests are arguably protected by the Bankruptcy Code, the harm they suffered remains indirect. See Ernie Haire, 764 F.3d at 1326 (“Allowing appeals from parties who have suffered only an indirect harm or who hold interests outside the scope of the Bankruptcy Code would defeat the very purpose underlying our person aggrieved standard.”).
The principles underlying the persons aggrieved doctrine support the district court’s conclusion that the Lenders are not persons aggrieved. The doctrine *460 is designed “to prevent bankruptcies from being needlessly prolonged by parties whose interests are not central to the process.” Id, at 1327; see also In re First Cincinnati, Inc., 286 B.R. 49, 51 (6th Cir. BAP 2002) (noting that doctrine is intended “to prevent marginally interested parties from litigating satellite issues up and down the appellant chain while the bankruptcy case stalls out and neither creditors nor debtors receive their relief intended by the Code”). The Lenders’ interests here are not central to the bankruptcy process, and allowing them to appeal the bankruptcy court’s order “would completely undermine the rationale behind [the] standard and bring bankruptcy proceedings to a grinding halt.” Ernie Haire, 764 F.3d at 1327. The district court did not err in dismissing the Lenders under the persons aggrieved doctrine.
í]í
The judgment is affirmed.

. The Honorable Patrick J. Schiltz, United States District Judge for the District' of Minnesota.