# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 16-6009

_____

In re: Michael Robert Wigley

*Debtor*

------------------------------

Barbara Wigley

*Interested party - Appellant*

v.

Michael Robert Wigley

*Debtor - Appellee*

Lariat Companies, Inc.

*Creditor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: August 12, 2016
Filed: September 21, 2016

_____

Before SCHERMER, NAIL and SHODEEN, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Barbara Wigley appeals from the bankruptcy court's[1]: (1) November 18, 2015 order denying confirmation of Robert Wigley's (Debtor) second modified Chapter 11 plan, establishing deadlines for the Debtor to file a modified plan, and obtain confirmation of it, and denying Lariat Companies, Inc.'s (Lariat) request to dismiss the Debtor's Chapter 11 case or to convert the case to Chapter 7;[2] (2) February 18, 2016 order confirming the Debtor's fourth modified Chapter 11 plan; and (3) order granting relief from the automatic stay to allow Lariat to exercise its rights and remedies against Barbara Wigley in state court litigation. For the reasons that follow, we dismiss this appeal based on lack of standing. To the extent that Barbara Wigley has standing to bring this appeal, we have jurisdiction over this appeal from the final orders of the bankruptcy court and we affirm.[3] *See* 28 U.S.C. § 158(b).

## ISSUES

The threshold issue is whether Barbara Wigley has standing to bring this appeal. We hold that she does not and we dismiss this appeal. To the extent that Barbara Wigley has standing to bring this appeal, we address the two remaining issues on appeal, whether the bankruptcy court erred when it: (1) denied approval of a settlement in the Debtor's Chapter 11 plan, resulting in the denial of confirmation of the plan and confirmation of a later plan with a provision stating that the Debtor

---

[1] The Honorable Katherine A. Constantine, United States Bankruptcy Judge for the District of Minnesota.

[2] Barbara Wigley's appeal only concerns the portions of the order concerning denial of confirmation of the Debtor's second modified Chapter 11 plan and establishing deadlines in connection therewith.

[3] We review the November 18, 2015 order in connection with the February 18, 2016 order, which is a final order. We have jurisdiction over "the events and rulings leading to a final order." *Zahn . Fink (In re Zahn),* 526 F.3d 1140, 1143 (8th Cir. 2008).

would not pursue any avoidance actions against his wife; and (2) entered the stay relief order. We find no error by the bankruptcy court.

## BACKGROUND

Extensive litigation preceded the filing of the Debtor's Chapter 11 bankruptcy case, including a lawsuit holding the Debtor liable as the guarantor of a lessee's obligations under a real property lease and related proceedings, an involuntary Chapter 7 bankruptcy of the Debtor, a Chapter 11 bankruptcy of the lessee, and fraudulent transfer proceedings against the Debtor and his wife. The dispute in this appeal focuses on the fraudulent transfer action. As background, we outline the proceedings relating to the guarantee judgment against the Debtor.

Lariat, the lessor under a lease for which the Debtor personally guaranteed the obligations of the lessee (an LLC that he had formed) obtained a state court judgment exceeding $2.2 million against the Debtor and the LLC. Non-bankruptcy attempts by the Debtor to avoid collection of that judgment proved unsuccessful. The Debtor unsuccessfully brought a state court lawsuit seeking relief from the guarantee judgement. The Debtor's lawsuit against Lariat was dismissed but the Debtor appealed the dismissal order, which remains pending due to the Debtor's bankruptcy. A separate attempt by the Debtor in the LLC's bankruptcy case to enjoin Lariat from enforcing the guarantee judgment was also unsuccessful. Ultimately, Lariat obtained a state court order (which was stayed by the Debtor's Chapter 11 filing) allowing it to liquidate the Debtor's non-exempt assets to satisfy the guarantee judgment.

Lariat (together with other creditors) commenced a pre-petition fraudulent transfer action against the Debtor's wife in state court, and later added the Debtor as a co-defendant. Ultimately, the Debtor and his wife were held jointly and severally liable to Lariat for fraudulent transfers totaling approximately $800,000. The Debtor and his wife later moved in the state court for amended findings in that action. On the petition date of the Debtor's Chapter 11 case, the state court had not ruled on the

motion for amended findings and the Debtor believed that the automatic stay applied to the fraudulent transfer proceeding.

The Debtor filed his bankruptcy petition on February 10, 2014. On his schedules, the Debtor listed assets exceeding the amount of his liabilities. Lariat's guarantee judgment was capped under Bankruptcy Code § 502(b)(6).[4] The Debtor filed his Second Modified Plan of Reorganization (Second Modified Plan), which proposed to release his wife, Barbara Wigley, from all claims held against her by the Debtor or the estate (eliminating the fraudulent transfer judgment against her) in exchange for her settlement payment (Settlement). Specifically, the Second Modified Plan stated:

I. DEFINED TERMS

"Barbara Wigley Settlement Payment" means the sum of $350,000.00, to be paid pursuant to Section 4.3(A) of the Plan.

4.3. Plan Performance

A. Plan Funding.
In exchange for the release provided for in Section 4.4 of the Plan, on or before the Effective Date, Barbara Wigley shall remit the Barbara Wigley Settlement Payment to the Debtor, and the Debtor shall distribute one hundred percent of such funds to the holders of Class 1 [general unsecured] claims pursuant to the terms of the Plan. The Debtor shall be responsible for payment of all other amounts due and payable under the Plan.

---

[4] Lariat appealed the bankruptcy court's order capping its proof of claim under § 502(b)(6). We affirmed in part, reversed in part and remanded to the bankruptcy court for further proceedings. Following our opinion, the bankruptcy court entered an order allowing Lariat's claim in an amount certain. That order has not been appealed.

4.4. Settlement and Release of Claims Against Barbara Wigley

Confirmation of the Plan shall constitute approval of a settlement agreement under which all claims that the Debtor or any other representative of the estate could have asserted against Barbara Wigley as of the Confirmation Date, including but not limited to Avoidance Actions, shall be released in exchange for payment of the Barbara Wigley Settlement Payment, which shall be due no later than the Effective Date. The settlement and release provided for herein shall be binding on all creditors and other parties [sic] interest, whether or not entitled to receive payments or other distributions under the Plan.

The Second Modified Plan proposed to pay Lariat (and all allowed claims in Lariat's class of unsecured creditors) in full with interest. The other classes under the plan were not impaired.

Lariat objected to the Second Modified Plan and filed a motion seeking dismissal or conversion of the Debtor's case to Chapter 7 (specifying a preference for dismissal over conversion) for bad faith. On November 18, 2015, the bankruptcy court entered an order denying Lariat's motion to dismiss or covert, denying confirmation of the Second Modified Plan, and establishing deadlines for the Debtor to file a modified plan and obtain confirmation of it (November 18, 2015 Order).

The Debtor proposed a Fourth Modified Plan of Reorganization (Fourth Modified Plan), which again proposed full payment to unsecured creditors, and also included a provision stating that the Debtor will not pursue any avoidance actions against his wife. Specifically, the Fourth Modified Plan states:

4.4 Reservation of Rights, Power and Jurisdiction

A. Rights and Powers

After confirmation of the Plan, the Debtor will retain authority to:

-5-

. . .

    (3) Pursue any claims against any third parties; provided, however, that the Debtor (whether as Debtor in Possession, pre- or postconfirmation Debtor, or any Chapter 11 trustee, agent, or committee) shall not pursue any Avoidance Actions against Barbara Wigley, except as may be permitted pursuant to further Court order;

    . . . .

Over Barbara Wigley's objection, the Fourth Modified Plan was confirmed.

Following confirmation of the Fourth Modified Plan and upon Lariat's motion, the bankruptcy court granted limited relief from the automatic stay (Stay Order), stating that "[t]he automatic stay, if any, imposed by 11 U.S.C. § 362(a) is terminated such that [Lariat] may exercise its rights and remedies under applicable nonbankruptcy law with respect to continuing the pending fraudulent conveyance action . . . against Barbara Wigley based on prepetition events." We denied a motion by Barbara Wigley for a stay pending appeal of the Stay Order. At oral argument, counsel advised us that she planned to participate in an August state court hearing in the fraudulent transfer action.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Loop Corp. v. U.S. Trustee (In re Loop Corp.)*, 379 F.3d 511, 515 (8th Cir. 2004) (citing *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375, 379 (8th Cir. 2000)). "A bankruptcy court's approval of a settlement will not be set aside unless there is plain error or abuse of discretion." *Tristate Financial, LLC v. Lovald,* 525 F.3d 649, 654 (8th Cir. 2008) (quoting *Martin v. Cox (In re Martin)*, 212 B.R. 316, 319 (8th Cir. BAP 1997) (citation omitted)). We review for an abuse of discretion the decision whether to grant or deny relief from the automatic stay under Bankruptcy Code § 362(a). *Wiley v. Hartzler (In re Wiley)*, 288 B.R. 818, 821 (B.A.P. 8th Cir. 2003).

-6-

**DISCUSSION**

Barbara Wigley characterizes the matter before us as involving issues related to denial of administration of an avoidance action (particularly recovery under § 550) and the rights of Lariat and the Debtor with respect to that action. We disagree. It is nothing more than a matter concerning the propriety of the bankruptcy court's denial of the Settlement proposed in the Second Modified Plan, which led to confirmation of the Fourth Modified Plan. We also review the bankruptcy court's grant to Lariat of relief from the automatic stay to pursue its cause of action against Barbara Wigley in the fraudulent transfer state court action.

## Standing

Bankruptcy appellate standing is narrower than Article III standing. *Opportunity Finance, LLC v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016) (citing *O& S Trucking, Inc.v. Mercedes Benz Fin. Svs. USA (In re O&S Trucking, Inc.)*, 811 F.3d 1020, 1022–23 (8th Cir. 2016)). To have standing to bring this appeal, Mrs. Wigley must be a "person aggrieved." *Id.* at 457 (declining request to reconsider the "person aggrieved" standard). The "person aggrieved" doctrine " limits standing to persons with a financial stake in the bankruptcy court's order, meaning they were directly and adversely affected pecuniarily by the order." *Id*. at 458 (quoting *Peoples v. Radloff (In re Peoples)*, 764 F.3d 817, 820 (8th Cir.2014)). "An appellant is a party aggrieved 'if the bankruptcy court order diminishes the person's property, increases the person's burdens, or impairs the person's rights.' " *Id.* (quoting *Williams v. Marlar (In re Marlar)*, 267 F.3d 749, 753 n. 1 (8th Cir.2001)); *O& S Trucking, Inc.*, 811 F.3d at 1023 ("the appellate has the burden to demonstrate 'the challenged order directly and adversely affect[ed] his pecuniary interests.' ") (quoting *Splenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001)). "The [person aggrieved] doctrine is designed 'to prevent bankruptcies from being needlessly prolonged by parties whose interests are not central to the process.'" *Id*. at 459-60 (quoting *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1327 (11th Cir. 2014)).

-7-

Mrs. Wigley lacks standing to bring this appeal because she is not a person aggrieved.[5] She complains about the bankruptcy court's denial of approval of the Settlement of the fraudulent transfer ruling that would have benefitted her, and which led to confirmation the Debtor's Fourth Modified Plan. It is ironic that Mrs. Wigley appealed a decision to confirm her husband's Fourth Modified Plan when he, the Debtor, did not. Mrs. Wigley submits that if the Settlement had been approved and the Fourth Modified Plan had not been confirmed, she would have retained her interest in the transferred property in return for the Settlement payment and she would not have to participate in further state court litigation. She also complains that Lariat should not have been granted relief to proceed with the state court fraudulent transfer action against her.

"Generally, a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved." *Opportunity Finance, LLC,* 822 F.3d at 458 (citation omitted). This principle applies even where "litigation has already begun against the defendant, and the possibility of liability is more than theoretical." *Id*. The fact that Mrs. Wigley is not a person aggrieved is apparent here where on the petition date, the state court had already ruled in favor of Lariat in the fraudulent transfer action (subject only to a motion to amend and a possible appeal). The bankruptcy court's decisions did not change Mrs. Wigley's rights or interests in the state court action. In addition, the stay relief order does not make Mrs. Wigley a "person aggrieved" since the stay did not apply to the action by Lariat against Mrs. Wigley. There is no direct pecuniary harm to Mrs. Wigley from the bankruptcy court's orders.

---

[5] Earlier in this appeal, Lariat filed a *Motion to Dismiss Appeal*, which was based primarily on lack of standing. We denied that motion because we wanted to make a full plenary review of the issues.

Even if Mrs. Wigley held a direct financial interest, she would lack standing because her interest in settling her fraudulent transfer liability on her own terms, rather than facing the ruling entered against her in state court, is not an interest protected by the Bankruptcy Code. *Westlb AG v. Kelly*, 531 B.R. 783, 789 (D. Minn. 2015) (citing *Ernie Haire Ford, Inc.*, 764 F.3d at 1327) ("Even when an appellant has a direct pecuniary interest in a bankruptcy-court order, he may nevertheless lack standing to appeal that order if the interest he seeks to vindicate is not one that is protected by the Bankruptcy Code."), *aff'd* 822 F.3d 451 (8th Cir. 2016).

Overall, Mrs. Wigley's appeal amounts to nothing more than an expression of her dissatisfaction with the failed attempt by her husband in his bankruptcy case to protect her from the state court's ruling. Her interests are not central to the bankruptcy process and she is not a person aggrieved. *Opportunity Finance, LLC*, 822 F.3d at 460 (no standing where appellants' interest were not central to the bankruptcy process).

Because Barbara Wigley lacks standing, dismissal of this appeal is proper. However, to the extent she has standing, we address the merits of the remaining issues.

**Plan Confirmation**

The bankruptcy court did not abuse its discretion when it denied approval of the Settlement in the Debtor's Second Modified Plan and confirmed the Debtor' Fourth Modified Plan.

Bankruptcy Code § 1129 sets forth the requirements for confirmation of a plan. Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code. Bankruptcy Code § 1123(b)(3)(A) states that "a plan may provide for the settlement . . . of any claim . . . belonging to the debtor or to the estate." "[T]he standards for approving settlements as part of a plan of reorganization are the

same as the standards for approving settlements under Fed. R. Bankr.P. 9109." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 832 (Bankr. D. Del. 2008). Rule 9019(a) states that "the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

In the Eighth Circuit, the standard for evaluation of a settlement "is whether the settlement is fair and equitable and in the best interests of the estate." *Tristate Financial, LLC,* 525 F.3d at 654 (citing *Martin*, 212 B.R. at 319 (internal quotation marks and citation omitted) (relying, in part, on *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). A settlement need not be perfect. Instead, the bankruptcy court must "determine that the settlement does not fall below the lowest point in the range of reasonableness." *Id.* at 654. To determine the reasonableness of a settlement, we look at what are known as the *Flight Transportation* or *Drexel* factors. *Interlachen Harriet Investments Ltd. v. Kelley (In re Petters Co., Inc.)*, 455 B.R. 166, 175 (B.A.P. 8th Cir. 2011) ("Although these refer to different cases, the factors are the same, *Flight Transportation* simply quotes *Drexel*."); *Drexel Burnham Lambert Corp. v. Flight Transp. Corp. (In re Flight Transp. Sec. Litigation)*, 730 F.2d 1128 (8th Cir.1984); *Drexel v. Loomis*, 35 F.2d 800 (8th Cir.1929). The court reviewing a settlement:

> must consider all factors bearing on the fairness of the settlement, including
> "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."

*Flight Transp. Corp.*, 730 F.2d at 1135 (quoting *Loomis*, 35 F.2d at 806).

The bankruptcy court found that the first three *Flight Transportation* factors did not favor approving the Settlement because the litigation of the fraudulent transfer action was complete other than a pending motion for amended findings and any appeal. It also stated that there is no difficulty with collection from Mrs. Wigley. On appeal the parties have not focused on these findings by the bankruptcy court, and we see no error with them.

The court's examination of Lariat's interest under the fourth factor (the paramount interest of the creditor and a proper deference to their reasonable views in the premises) and its determination that the proposed Settlement prejudiced the interest of Lariat, were appropriate. The bankruptcy court recognized that although Lariat's allowed claim would be satisfied in full under the plan, the Settlement prejudiced Lariat because it was an attempt by the Debtor to control Lariat's state court fraudulent transfer judgment against Mrs. Wigley. This finding was firmly supported by the record and is undeniable.

We see no error in the bankruptcy court's determination that the proposed Settlement was not "fair and equitable and in the best interests of the estate." *Tristate Financial, LLC,* 525 F.3d at 654 (citation omitted). A bankruptcy court has "the right to approve settlements, and may do so, in a proper case, over the objection of some parties, so long as a settlement is found to be in the best interests of the estate as a whole." *Flight Transp. Corp.*, 730 F.2d at 1138. The bankruptcy court appropriately determined that the Settlement should not be approved because Lariat would be harmed while there would be no benefit to the estate. As it stated, the only benefit would be to Barbara Wigley (obviously an insider). It is undisputed that the Debtor could fully fund the plan without the Settlement payment from Mrs. Wigley. The proposed Settlement provided for Mrs. Wigley's payment of 44% (of the amount of the judgment against her) in satisfaction of Lariat's fraudulent transfer judgment against her. The amount of the offer does not change the fact that there was no benefit to the estate. Mrs. Wigley could have offered 1% or 99%. It would not have

mattered since no amount of settlement money was needed to fund the plan. In a surplus case like this where the Debtor could fully fund the plan and the creditor has reduced its claim to judgment, we doubt that the fourth factor of the *Flight Transportation* test is relevant.

Because we find that the Settlement passes the *Flight Transportation* test, we need not discuss third-party releases under Bankruptcy Code § 524(e).

## Stay Relief Order

The stay relief order appealed by Mrs. Wigley states that "[t]he automatic stay, if any, imposed by 11 U.S.C. § 362(a) is terminated such that [Lariat] may exercise its rights and remedies under applicable nonbankruptcy law with respect to continuing the pending fraudulent conveyance action . . . against Barbara Wigley based on prepetition events." The bankruptcy court did not abuse its discretion in entering this order because the stay did not apply in the first instance to the action by Lariat (a creditor) against Barbara Wigley (a non-debtor). No order was entered extending the automatic stay to Mrs. Wigley. At oral argument, Lariat conceded that it brought the stay relief motion as a cautionary measure.

### CONCLUSION

For the reasons stated, this appeal is dismissed based on Barbara Wigley's lack of standing. To the extent Barbara Wigley has standing, the decisions of the bankruptcy court are affirmed.